**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROLAND D. JOHNSON, JR.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 15-471 (JEB)** |
| **MEGAN J. BRENNAN,** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

*Pro se* Plaintiff Roland Johnson, a U.S. Postal Service employee, filed an employment-discrimination and retaliation claim with his employer in 2006. Now almost a decade later, and after winning his case before the U.S. Equal Employment Opportunity Commission, he alleges the Post Office still owes him money for attorney fees and costs he incurred in winning and subsequently enforcing the EEOC's decision. Johnson claims to be trapped in an ever-expanding spiral of attorney-fee expenses, generated in the course of attempting to recover previously incurred attorney fees that the Agency has repeatedly refused to pay. Hoping to get off that treadmill once and for all, he filed suit here. Defendant Megan Brennan, Postmaster General of the U.S. Postal Service, now moves to dismiss, arguing that the Court is without subject-matter jurisdiction to entertain his suit. Finding Defendant has construed Johnson's Complaint too narrowly, the Court will deny her Motion.

I.       **Background**

According to his Amended Complaint, which the Court must credit at this stage, Johnson works in the Post Office's vehicle-maintenance facility. <u>See</u> Am. Compl., ¶ 9. For reasons that are both undisclosed and immaterial here, Johnson filed a discrimination complaint with the

Agency in the fall of 2006 and retained counsel sometime thereafter.  See id., ¶¶ 10, 12.  An

Administrative Judge for the EEOC found the Postal Service liable for discrimination and

retaliation, awarding monetary and prospective relief and assessing attorney fees against the

Agency of $105,795.61.  See id., ¶ 14; see also Def. Mot., Exh. C (EEOC Sept. 2014 Decision)

at 2.  The Postal Service appealed the decision to the EEOC's appellate body for federal workers

– the Office of Federal Operations, which the Court will also refer to for the sake of simplicity as

the EEOC – which affirmed the Administrative Judge's decision across the board.  See Am.

Compl., ¶ 16.  In that decision, dated May 15, 2012, the EEOC also ordered the Agency, upon

receipt of a verified statement from Johnson, to pay additional fees – beyond the $105,795.61 –

that were incurred by his attorney in prosecuting the case after the Administrative Judge's

original decision.  See id., ¶¶ 16-17.

Johnson then undertook to recover those additional fees – a task that, as described in his

Complaint, was nearly Sisyphean, resulting in five distinct requests for fees, at least some

portions of which still remain unpaid.  Although all of the specifics of these fee requests are not

directly relevant to this Opinion, the Court believes that a detailed narrative will prove useful to

the parties as the case progresses, both in setting out the areas of disagreement and noting where

the Court requires future clarification.  To aid in this process, and because the requests are

numerous and overlapping, the Court includes as an appendix to the Opinion a chart breaking out

the payments as described in the Complaint and documents referenced therein.  Readers not

possessing accounting degrees may find it helpful to have the appendix handy as they proceed

through the following facts.

About two months after the May 2012 EEOC decision, Defendant paid the first set of

fees assessed by the Administrative Judge – $105,795.61 – and Johnson submitted his first

supplemental fee request.  That request included fees for work beginning after the date of the

Administrative Judge's decision, running through the EEOC appeal, and ending with the hours

spent preparing the first fee request itself.  See id., ¶¶ 17-18.  It was submitted on July 6, 2012,

and totaled $27,634.50.  See id.; EEOC Sept. 2014 Decision at 2.  In a letter dated August 4,

2012, the Postal Service agreed to pay that sum and stated rather forthrightly that "[t]he Agency

acknowledges that [Plaintiff's] counsel may separately apply for payment of additional

attorney's fees and costs incurred after July 6, 2012."  EEOC Sept. 2014 Decision at 2.  The

Postal Service then paid the sum requested, $27,634.50, in either August or September 2012.

See id.; Am. Compl., ¶ 18; Def. Mot., Exh. A (Third Fee Request) at 4.  (The Court notes that a

lack of documents often forces it to cite later-occurring fee requests, which are cumulative of

earlier requests, for facts pertaining to those earlier requests.)

Additional fee requests soon followed, apparently because Defendant dragged its feet in

complying with some of the EEOC's remedial commands.  Between May and December 2012,

Johnson's attorney attempted to "induce the Agency to comply with the [EEOC's] May 15, 2012

order," which was necessary because even as of December 2012, the Agency had yet to furnish

certain prospective remedies and had failed to pay interest on Johnson's back pay.  See EEOC

Sept. 2014 Decision at 2-3.  The attorney's efforts resulted in two more fee requests: one related

to a Petition for Enforcement that he filed with the EEOC (the second request), and one related

to coaxing the Agency into compliance (the third request).

As to the former, sometime in mid-December 2012 Johnson filed a PFE with the EEOC,

which included a specific request for 22.6 hours' worth of fees related to that petition, and

nothing else, incurred between December 7 and 12, 2012.  See Def. Mot., Exh. B (Fourth Fee

Request) at 2-3 (describing fees incurred in preparing the PFE); Am. Compl., ¶ 32.  The Court

presumes that, although never so designated, this is Johnson's <u>second</u> fee request, since it is the only one described in the Complaint to occur between the first request and the third, which was submitted at the end of December 2012.  <u>See id.</u>, ¶ 20.[1]  Unlike all of his other fee requests, however, the second request appears to be the only one submitted directly to the EEOC rather than to the Postal Service.

Johnson, however, also wanted attorney fees for the time his counsel spent trying to induce compliance directly from the Agency, which is what prompted the third fee request.  That request, which totaled $9,122.50, comprised all the time his attorney spent between July 2012 and the end of December 2012 trying to coax remedies out of the Post Office, less the time spent preparing the PFE.  <u>See</u> Am. Compl., ¶ 20; Third Fee Request, Exh. 2 (Detailed Worksheet, Third Fee Request) at 1 ("[E]xcludes hours relating to enforcement petition.").  As with the first fee request, it included hours spent preparing the request itself.  <u>See</u> Detailed Worksheet, Third Fee Request at 3.

About a month later and in response to Johnson's PFE (which includes the second request), on January 18, 2013, the Postal Service filed with the EEOC a Compliance Report detailing what it had done to comply with the EEOC's May 2012 order.  <u>See</u> Fourth Fee Request at 2.  In it, Plaintiff alleges, the Agency claimed that it had fully complied with the decision, at least as of January 2013.  <u>See id.</u>  (Neither party has supplied the Court with the report itself, nor

---

[1] Confusingly, Plaintiff appears to mix up some numbers in his Amended Complaint.  Although the record does not include the second fee request itself, subsequent requests indicate that Johnson's counsel spent 22.6 hours from December 7–12 working on the PFE, for a total of $10,057.  <u>See</u> Fourth Fee Request at 3; Am. Compl., ¶ 32.  His fifth fee request, which is cumulative of the fourth, also includes the $10,057 figure for work spent on the PFE, but it erroneously indicates that the sum resulted from 20.5 instead of 22.6 hours.  <u>See</u> Def. Mot., Exh. E (Fifth Fee Request) at 2.  Plaintiff repeats that error in one paragraph of his Complaint, <u>see</u> Am. Compl., ¶ 41, but in another paragraph he indicates that the time spent on the PFE was 22.6 hours.  <u>See id.</u>, ¶ 34.  The Court believes that any reference to 20.5 hours related to the PFE is simply a scrivener's error and will presume that the hours in fact total 22.6, since that sum multiplied by the attorney's hourly rate of $445 totals $10,057.

indicated whether the EEOC took any action after it was filed.)  At a minimum, however, it seems undisputed that, notwithstanding its statement of full compliance, the Postal Service did not remit payment for the second fee request contained in the PFE.  <u>See</u> Def. Mot. at 4 n.3.

During the early months of 2013, the Agency apparently took issue with the fees claimed in either or both the second and third fee requests, prompting Johnson's counsel to spend additional hours trying to resolve the disagreement.  <u>See</u> Fourth Fee Request at 2-3.  Despite those negotiations, the Agency ultimately determined, in a letter dated March 28, 2013, that it would pay only a fraction of the <u>third</u> fee request – namely, $2,000 of the $9,122.50 sought.  <u>See</u> EEOC Sept. 2014 Decision at 2.  (The parties have not supplied the Court with the letter decision itself, and thus it is unclear whether the letter also addressed the <u>second</u> fee request.)  Treating the letter as a final agency action on his third request, Johnson appealed to the EEOC on April 8, 2013.  <u>Id.</u>; <u>see</u> Am. Compl., ¶ 24.

Before giving the EEOC a chance to rule on that appeal, however, Johnson submitted a <u>fourth</u> fee request to the Postal Service on April 17, 2013.  <u>See</u> Am. Compl., ¶ 22.  That request included:

(a) a renewed request for the sum sought in the <u>second</u> fee request/December 2012 PFE ($10,057 for 22.6 hours, plus $17.99 in costs);

(b) a renewed request for the sum sought in the <u>third</u> fee request ($9,122.50 for 22.5 hours, plus $57.93 in costs); and

(c) a <u>new</u> request for hours spent from January 19 through April 3, 2013, reviewing the Agency's January 2013 Compliance report and trying to cajole the Agency into paying both the second and third fee requests ($9,969.50 for 22.9 hours, $1,157 for 2.6 additional

hours, and $9.56 in costs).[2]

See Fourth Fee Request at 3; see id., Appendix (Detailed Worksheets, Fourth Fee Request).  For

whatever reason, Johnson's attorney did not include the hours spent in preparing the fourth

request itself, contrary to her practice in the first three.

As far as the Court can tell, the fourth request went unaddressed for some time.

Immediately after filing the EEOC appeal relating to the third request, Johnson's attorney

incurred a few hours here and there working on the briefing in that matter.  See Def. Mot., Exh.

E (Fifth Fee Request) at 3; see id. (Detailed Worksheets, Fifth Fee Request).  But the record

before the Court reflects that nothing much else happened – meaning the Postal Service took no

action on the fourth request, and the EEOC took no action on Johnson's appeal of the March

2013 letter decision – for about a year and a half.

On September 11, 2014, the EEOC finally issued a decision on Johnson's appeal of the

March 2013 letter.  See EEOC Sept. 2014 Decision at 5.  In it, the EEOC indicated that it was

"modif[ying]" the Postal Service's March 2013 decision (acting on his third request) and

accordingly ordered the Agency to: (a) pay the amount of fees requested – $9,122.50 – though it

did not address the $57.93 in costs; and (b) submit a compliance report demonstrating that it had

implemented the EEOC's decision.  See id. at 3.  It also stated that (c) Johnson was "entitled to

an award of reasonable attorney's fees incurred in processing the complaint," which the EEOC

---

[2] This amount appears to result from a simple math error.  Johnson's attorney calculated the product of 22.9 hours at a rate of $445 per hour to be $9,969.50 rather than $10,190.50.  See Detailed Worksheets, Fourth Fee Request at 1-3.  The error appears to have occurred in the attorney's entry for March 12, 2013, in which she claimed 1.3 hours of work.  Id. at 3.  Given her hourly rate of $445, the billed amount should have been $578.50.  But the worksheet claims only $357.50 for those hours.  Id.  Neither side has sought to modify this amount, however, so the court will presume that Johnson does not seek relief from his counsel's mistake.

indicated the Agency "shall . . . process" upon receiving a verified statement of fees from

Johnson.  Id.  The opinion also noted:

> If the Agency does not comply with the [EEOC's] order, the
> Complainant may petition the Commission for enforcement of the
> order.  29 C.F.R. § 1614.503(a).  The Complainant also has the right
> to file a civil action to enforce compliance with the [EEOC's] order
> prior to or following an administrative petition for enforcement.  See
> 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g).
> Alternately, the Complainant has the right to file a civil action on
> the underlying complaint . . . .

Id. at 4 (citing 29 C.F.R. §§ 1614.407, 1614.408; 42 U.S.C. § 2000e-16(c)).  Although it is not

clear precisely when it happened, Plaintiff appears to agree that the Agency eventually paid the

$9,122.50 in fees, but declined to pay the $57.93 in costs.  Compare Am. Compl., ¶ 41 (no

request for payment of attorney fees associated with third request) with id., ¶ 51 (seeking $57.93

in costs from third fee request); see also Def. Mot. at 4 n.3.

Shortly after receiving the EEOC's decision, Johnson's attorney re-submitted the fourth

fee request on October 3, 2014.  See Fifth Fee Request at 2.  She also prepared a fifth and final

request, which she submitted about a month later on November 11, 2014.  See id. at 5.  In

preparing the latter, she followed the EEOC's guidance to seek payment for the hours spent

preparing that appeal, plus additional hours spent drafting the fifth request itself and ensuring

compliance with the EEOC's September 2014 decision (an additional $7,785 in fees and $24.89

in costs).  See id. at 3-4.  Johnson also renewed his requests for amounts previously sought but

still unpaid, which included: (a) the entirety of the second fee request ($10,057 in fees and

$17.99 in costs); (b) costs from the third fee request ($57.93); and (c) the entirety of the new

amounts stated in the fourth fee request ($9,969.50 and $1,157.00 in fees and $9.56 in costs).  Id.

at 4.

On December 29, 2014, the Postal Service acted on both the <u>fourth</u> and <u>fifth</u> fee requests. <u>See</u> Def. Mot., Exh. F (Dec. 2014 Final Agency Decision).  It agreed to pay all but the $10,057 in fees originating in the <u>second</u> fee request and $57.93 in costs derived from the <u>third</u> fee request.  <u>See</u> <u>id.</u> at 4.  The decision does not state why it denied that portion of Johnson's request for fees and costs, although there is a possibility that the "Agency Counsel response to Complainant's fee petition," which the decision "incorporated by reference," offers a more thorough explanation.  <u>Id.</u> at 4.  (That document has not been presented to the Court.)  In his Complaint, Johnson contends that those sums were denied because the Agency believed them to be duplicative of the sums already recovered in the third fee request.  <u>See</u> Am. Compl., ¶ 31. Johnson's counsel sent a letter to Defendant explaining that such reasoning was erroneous, but the Postal Service demurred, issuing a second Final Agency Decision on February 12, 2015, that purportedly mirrored the first.  <u>See</u> <u>id.</u>, ¶¶ 32-34.  (The Second Final Agency Decision has likewise not been presented to the Court.)  In that decision, however, the Agency explained that it had refused to pay the PFE-related fees not because they were duplicative, but because the request was untimely.  <u>Id.</u>, ¶ 35.

Hoping to finally clinch an elusive victory, and taking a cue from the Agency decision stating that, if Johnson were dissatisfied, he could either appeal to the EEOC or file suit in district court, <u>see</u> Dec. 2014 Final Agency Decision at 5, Plaintiff chose the latter course, filing a Complaint for all amounts previously requested but still unpaid.  The Court calculates this sum to be $10,114.93 ($10,057 in fees and $57.93 in costs), as Plaintiff has not challenged the government's assertion that it is "processing a payment for $18,911.50 in fees and $522.44 in costs," Mot. at 5 n.4, as it committed to do in its first Final Agency Decision.  <u>See</u> Dec. 2014

Final Agency Decision at 4.  Defendant now moves to dismiss for lack of subject-matter jurisdiction.

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims.  See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 & n.3 (2006); Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).  Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction. . . ."  Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Venetian Casino Resort, L.L.C. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005).

## III.    Analysis

In seeking dismissal, the government couches Plaintiff's suit as an "independent action solely for attorney's fees arising from [a Title VII] administrative proceeding."  Def. Mot. at 2. As no provision in Title VII confers jurisdiction on federal district courts to hear such an action, Defendant argues, the case must be dismissed.  Id. at 7.

If the Court were to view Plaintiff's suit through such a lens, the government has a point: Title VII's provisions for recovering attorney fees do not seem to permit a person who succeeds

on his discrimination claim administratively – but believes the administrative process yielded an

unsatisfactorily skimpy attorney fee award – to then file suit in federal court to recover the

balance.  But because Plaintiff's Complaint may fairly be read as an action to <u>enforce</u> a fee

award that the administrative process has already determined he is entitled to receive, the Court

concludes he may proceed.  Before addressing the government's argument, some background on

the Title VII administrative process is in order.

    A.  <u>Title VII Administrative Process</u>

Title VII of the Civil Rights Act of 1964 (and as amended) prohibits employment

discrimination on the basis of race, color, religion, sex, or national origin against, *inter alia*, a

wide swath of federal workers.  <u>See</u> 42 U.S.C. §§ 2000e-16(a); 2000e-2(a).  Covered federal

employees, like Johnson, must first seek administrative adjudication of any claim of

discrimination prohibited by Title VII before filing suit in federal court.  <u>See generally</u> 42 U.S.C.

§§ 2000e-16; 2000e-5.  That adjudicative framework is governed by the EEOC, which requires

employees to follow a specific path in seeking redress.  <u>See id.</u>, § 2000e-16(b).  First, the

employee must file a complaint with his employing agency, which must then investigate and, if

requested by the employee, refer the case to an EEOC Administrative Judge (AJ) for a hearing.

<u>See</u> 29 C.F.R. §§ 1614.106, 1614.108, 1614.109.  The agency must then take final action – either

directly as a result of its own investigation, or by disputing or agreeing with the AJ's decision.

<u>Id.</u> § 1614.110.  If the agency does not "fully implement" the AJ's decision, as happened here,

then the agency must file an appeal with the Office of Federal Operations – the EEOC's

appellate arm.  <u>See id.</u> §§ 1614.110(a), 1614.403.  That body will then "review[] the record,

supplement[] it if necessary, and then issue a written decision."  <u>Scott v. Johanns</u>, 409 F.3d 466,

468 (D.C. Cir. 2005) (citing 29 C.F.R. §§ 1614.404, 1614.405).  The regulations also provide

that, where an employee is dissatisfied with an agency's final action – whether related to an AJ's decision or not – the employee has "two options: [he] may either file suit [in district court] or appeal to the EEOC." Id. (citing § 1614.110).

This right to proceed in court includes two different types of civil actions. "First, [employees] who prevail in the administrative process but who – for whatever reason – fail to receive their promised remedy, may sue to enforce the final administrative disposition." Id. at 469 (citing Wilson v. Pena, 79 F.3d 154 (D.C. Cir. 1996), and Houseton v. Nimmo, 670 F.2d 1375 (9th Cir. 1982)); see also 29 C.F.R. § 1614.503(g) (indicating that, where the EEOC "has determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the [EEOC] shall notify the complainant of the right to file a civil action for enforcement . . . ."). Importantly, such an action for enforcement of an EEOC decision involves a limited role for the district court, which has no authority to review the underlying merits or disturb the remedy ordered by the EEOC. See Scott, 409 F.3d at 469. Rather, the Court's only task is to determine "whether the employing agency has complied with the administrative disposition." Id.

Second, an employee who is "aggrieved by" – read: dissatisfied with – "the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action" under Title VII in federal district court. See 42 U.S.C § 2000e-16(c). In contrast to an enforcement action, an action brought by such an "aggrieved" employee means that he starts afresh in the district court, "trying de novo" his case as to "both liability and remedy." Scott, 409 F.3d at 472. The Court's decision here largely hinges on which type of action Johnson's is.

B.  <u>Enforcement vs. Fee Recovery</u>

In its Motion, the government wholly ignores the possibility that Johnson's Complaint might fairly be read as the former – *i.e.*, an action to enforce the EEOC's orders – and instead characterizes the suit as the latter – *i.e.*, a "Title VII . . . action[] solely for recovery of attorney's fees." Mot. at 10.  From its perspective, Johnson is simply trying to cleave off from his otherwise-successful administrative case a narrow request for <u>additional</u> fees, and to litigate his entitlement to those fees as a distinct action in federal court.  <u>See</u> Mot. at 8-9.  The problem with this framing, however, is that the patchy record before the Court does not reveal that Plaintiff is seeking <u>more</u> relief than what he was already granted during the administrative process.  If he is not, the Court may properly hear his claim as a civil action for enforcement.

Drawing heavily on the reasoning of the Fourth Circuit in <u>Chris v. Tenet</u>, 221 F.3d 648 (4th Cir. 2000), the government spends most of its time arguing that Title VII's jurisdictional grant, which states that "district court[s] . . . shall have jurisdiction of <u>actions brought under this subchapter</u>," 42 U.S.C. § 2000e-5(f)(3) (emphasis in <u>Chris</u>), limits them to adjudicating only "actions" that involve a litigant seeking to vindicate his substantive rights under Title VII.  <u>Chris</u>, 221 F.3d at 651.  In other words, section 2000e-5(f)(3)'s jurisdictional grant permits district courts to entertain a *de novo* suit for employment discrimination, but where liability and remedy have been determined through the administrative process, and where the litigant does not seek to try the merits all over again, § 2000e-5(f)(3) does not allow an individual to bring suit only for fees arising from that administrative proceeding.  <u>See</u> <u>id.</u> at 652 ("[T]o be an 'action[ ] brought under this subchapter' the civil action must involve a claim to remedy an unlawful employment practice, rather than contain only a single claim for attorney's fees and costs.").  This is so, the court held, even though a separate statutory provision grants courts the discretionary authority to

"allow the prevailing party . . . a reasonable attorney's fee . . . [and] costs."  § 2000e-5(k); see Chris, 221 F.3d at 653-54.

Even were the Court to agree with the Fourth Circuit's reasoning, Chris does not compel the conclusion that Johnson's Complaint should be dismissed for lack of subject-matter jurisdiction.  As an initial matter, the D.C. Circuit has not decided whether Title VII permits a litigant who succeeds on the merits of his administrative claim to then sue for additional fees in district court.  But see Moore v. D.C., 907 F.2d 165, 171-72, 176 (D.C. Cir. 1990) (interpreting provision in Handicapped Children's Protection Act worded nearly identically to § 2000e-5(k) to permit an "independent cause of action for fees").  In any event, the Chris decision has little bearing on the outcome here, where it is not clear what, if anything, Plaintiff seeks that has not already been granted him by the EEOC.

A comparison of the facts helps illustrate the difference.  In Chris, the plaintiff filed a sex-discrimination complaint with his employer, the CIA, which agreed to settle the claim. Chris, 221 F.3d at 650.  The settlement contract included a provision that, in the event the parties could not agree on the amount of attorney fees and costs, the CIA would pay "reasonable" fees and costs in accordance with EEOC regulations.  See id. (citing 29 C.F.R. § 1614.501(e)).  The parties' negotiations were unfruitful, and so the plaintiff filed with the CIA a request for fees, which it granted only in part.  Id.  The plaintiff then appealed to the EEOC, which increased the fee award but still granted less than the plaintiff wanted.  Id.  He then filed suit in district court to recover the balance, invoking § 2000e-5(f)(3), which the Fourth Circuit said he could not do.  Id. at 655.

The facts here are meaningfully different.  To begin, where the EEOC took concrete action in Chris, it is unclear what action it took, if any, on Plaintiff's December 2012 PFE and

the accompanying request for $10,057 in fees.  Undoubtedly, Johnson twice renewed his request

for $10,057 before the Postal Service in his fourth and fifth fee requests, but none of the

documents available to the Court at this stage indicates that the EEOC, as was the case in Chris,

acted on Johnson's request in any way whatsoever.  See Wilson, 79 F.3d at 167 (concluding that

employee was entitled to sue in district court to challenge the Coast Guard's calculation of his

back-pay award where EEOC did not act on his petition for enforcement within 180 days).

     In addition, it may be that one or more of Plaintiff's three requests for $10,057 fall within

the ambit of the EEOC's September 2014 order, in which it required the Postal Service to pay

attorney fees "incurred in the processing of the complaint."  EEOC Sept. 2014 Decision at 3; see

29 C.F.R. § 1614.501(e)(iv) ("Attorney's fees shall be paid for services performed by an attorney

after the filing of a written complaint, provided that the attorney provides reasonable notice of

representation to the agency, administrative judge or [EEOC].").  Although the Court lacks

almost any documentation of that appeal apart from the EEOC's final decision, Johnson suggests

in his Opposition that he argued his entitlement to $10,057 during that process.  See Opp. at 8 n.1

("The Postal Service erroneously states that Mr. Johnson did not raise the issue of attorney's fees

pertaining to the [PFE] in his [EEOC] Appeal. . . .  Such fees were addressed in detail on pp. 12-

14 of Mr. Johnson's appeal brief."); cf. Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146,

151 (D.C. Cir. 2015) (requiring court on a motion to dismiss under Rule 12(b)(6) to consider all

of pro se plaintiff's pleadings "in toto," "including those in [his] opposition to [defendant's]

motion").  If the $10,057 amount is covered by the EEOC's September 2014 Order, then this

current suit is nothing more than an enforcement action over which the Court would have

jurisdiction.

Alternatively, it may be that the EEOC's original decision of May 15, 2012, provides sufficiently expansive language that an entitlement to the $10,057 in fees flows naturally from its terms. (Like many other documents, including the second fee request and documents related to the 2014 EEOC appeal, the EEOC's original decision has not been presented to the Court.) If that is so, Johnson again may be entitled to sue in federal court to enforce compliance. See Herron v. Veneman, 305 F. Supp. 2d 64, 75 (D.D.C. 2004) (concluding that, where plaintiff is satisfied with administrative remedy, but agency fails to comply, plaintiff may sue in federal court to enforce compliance); see 29 C.F.R. § 1614.503 (describing civil action for enforcement of administrative award).

Under any of those scenarios, all of which are reasonably raised by Johnson's Complaint and the documents referenced therein, Plaintiff would have access to an enforcement remedy in federal court. And while the government may have other viable arguments for dismissal – for instance, that Plaintiff has failed to exhaust his remedies, that the Court is without power to assess the amount of a fee award even if the EEOC has determined that it should be paid, or that his Complaint is untimely – those have not been raised here, see Mot. at 1 n.1, and the Court will not consider them *sua sponte*. See Norris v. Salazar, 885 F. Supp. 2d 402, 414 & n.13 (D.D.C. 2012) (defenses of failure to exhaust administrative remedies and lack of timeliness raised by federal agency in Title VII case are not jurisdictional defects and may properly be considered only on a motion to dismiss for failure to state a claim).

As a final point, the Court observes that the Fourth Circuit itself, sitting *en banc*, has underscored just how limited it considers Chris's holding to be. In Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006) (*en banc*), the court concluded that Chris held only that "subject-matter jurisdiction" for plaintiff's claim for fees "was lacking under § 2000e–5(f)(1)." Id. at 425.

Importantly, Chris never argued "that subject-matter jurisdiction existed <u>under 28 U.S.C.[] §</u> <u>1331</u>," <u>id.</u>, as Plaintiff has asserted here, and thus the court never considered § 1331 as a separate source of subject-matter jurisdiction.  <u>Id.</u>  "<u>Chris</u> therefore did not hold that subject-matter jurisdiction is lacking under § 1331 for a claim of attorney's fees and costs only, much less that subject-matter jurisdiction is lacking under § 1331 for a claim of additional relief only."  <u>Id.</u> Nor, for that matter, did the court in <u>Chris</u> address the availability of an <u>enforcement</u> remedy in federal court under Title VII and its implementing regulations.

Finally, even if Johnson does not explicitly present his Complaint as an enforcement action, a fair reading of it, in concert with his Opposition, shows that he intended his suit as one for enforcement of remedies already granted, rather than an action to augment an administrative remedy he views as insufficient.  <u>See</u> Opp. at 7 (disagreeing that his action is, as Defendant claims, "an independent action solely for attorney's fees" and claiming instead that "this matter concerns the repeated failure by the Agency to comply with several Orders issued by the [EEOC] . . .").

The Court is thus not without subject-matter jurisdiction to entertain Johnson's suit as a civil action for enforcement of a (presumably) favorable administrative disposition.  In so concluding, however, it remains mindful of the D.C. Circuit's guidance that "[i]n [an] enforcement action[], the court reviews neither the discrimination finding nor the remedy imposed, examining instead only whether the employing agency has complied with the administrative disposition" as a whole.  <u>Scott</u>, 409 F.3d at 469.

**IV.     Conclusion**

For these reasons, the Court will deny Defendant's Motion to Dismiss.  A separate Order so stating will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   November 13, 2015

**Appendix**: <u>Johnson v. Brennan</u>, Civ. No. 15-471

| | Date of Costs Incurred | Amount | Agency Payments | Date of Payment | Balance |
|---|---|---|---|---|---|
| **Initial AJ Fee Award (Dec. 2008)** | Oct. 2007 - Dec. 2008 | $  105,795.61 | $  (105,795.61) | Aug. 2012 | |
| **First Request (Jul. 2012)** | Dec. 2008 - Jul. 2012 | $  27,634.50 | $  (27,634.50) | Aug. / Sep. 2012 | |
| **Second Request *a.k.a.* PFE (Dec. 2012)** | | | | | |
| *Fees* | Dec. 7 - 12, 2012 | $  10,057.00 | $  - | | |
| *Costs* | | $  17.99 | $  - | | |
| Subtotal | | $  10,074.99 | | | |
| **Third Request (Dec. 27, 2012)** | | | | | |
| *Fees* | | $  9,122.50 | $  - | | |
| *Costs* | | $  57.93 | $  - | | |
| Subtotal | | $  9,180.43 | | | |
| **Fourth Request (Apr. 17, 2013)** | | | | | |
| *Renewed Second Request* | | | | | |
| *Fees* | | $  10,057.00 | $  - | | |
| *Costs* | | $  17.99 | $  - | | |
| *Renewed Third Request* | | | | | |
| *Fees* | | $  9,122.50 | $  (9,122.50) | Sep. 2014 | |
| *Costs* | | $  57.93 | $  - | | |
| *New Amounts (Fourth Request)* | Jul. 6 - Dec. 27, 2012 (excluding Dec. 7 - 12, 2012) | | | | |
| *Fees* | | $  9,969.50 | $  - | | |
| *Fees* | | $  1,157.00 | $  - | | |
| *Costs* | | $  9.56 | $  - | | |
| Subtotal | | $  30,391.48 | | | |
| **Fifth Request (Nov. 11, 2014)** | | | | | |
| *Renewed Second Request* | | | | | |
| *Fees* | | $  10,057.00 | $  - | | $  10,057.00 |
| *Costs* | | $  17.99 | $  (17.99) | Fall 2015 | $  - |
| *Renewed Third Request* | | | | | |
| *Costs* | | $  57.93 | $  - | | $  57.93 |
| *Renewed Fourth Request* | | | | | |
| *Fees* | | $  9,969.50 | $  (9,969.50) | Fall 2015 | $  - |
| *Fees* | | $  1,157.00 | $  (1,157.00) | Fall 2015 | $  - |
| *Costs* | | $  9.56 | $  (9.56) | Fall 2015 | $  - |
| *New Amounts (Fifth Request)* | Apr. 17 - May 11, 2013; Oct. 1 - Nov. 11, 2014 | | | | |
| *Fees* | | $  7,785.00 | $  (7,785.00) | Fall 2015 | $  - |
| *Costs* | | $  24.89 | $  (24.89) | Fall 2015 | $  - |
| Subtotal | | $  29,078.87 | $  (18,963.94) | | $  10,114.93 |
| **Outstanding Balance** | | | | | $  10,114.93 |

**Note**: Cells highlighted in gray signal amounts in dispute.